In re SARAH WEINSTEIN *et al.*, Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ROLENE WEINSTEIN, Respondent-Appellant.)

First District (2nd Division)   No. 77-170

Opinion filed February 6, 1979.

---

* Justice Buckley participated in this decision while assigned to the Illinois Appellate Court, First District.

Ralph Ruebner, Daniel Cummings, and Randy K. Johnson, all of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

On December 10, 1976, the juvenile division of the circuit court of Cook County found Joseph Weinstein and respondent, Rolene Weinstein, unfit parents because they "failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare." The court entered an order terminating their parental rights and appointed the Department of Children and Family Services guardian of four of the Weinstein children[1] with the power to consent to their adoption. Neither parent raises an issue concerning the sufficiency of the pleadings or the sufficiency of the evidence to support the court's finding. However, respondent contends that she was denied her right to a jury trial on the question of her fitness as a parent.

■■ The issues presented for review are (1) whether the right to a jury

---

[1] It appears there is a fifth child who is not involved in this proceeding.

trial exists in proceedings under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) and the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1 *et seq.*) where the Acts do not specifically provide for or preclude trial by jury, and (2) whether an adult has a constitutional right to a jury trial in a proceeding to terminate "parental rights."[2]

We affirm.

On April 8, 1968, dependency petitions were filed by the State for four minor children of Rolene and Joseph Weinstein. The petitions alleged that the children were dependent because the father refused to take responsibility for them, and the mother had been arrested for contributing to the dependency and neglect of a child. (Ill. Rev. Stat. 1965, ch. 23, pars. 2360 and 2361.) On April 10, 1968, the children were placed in the temporary custody of the Department of Children and Family Services. At a hearing on April 22, 1968, the Weinstein children were found "neglected" and were placed in foster homes. Since April 1968 the children have not lived with either natural parent.

On January 6, 1975, the State filed petitions for "supplemental relief" for each child alleging that "the parents are unfit because they have failed to maintain a reasonable degree of interest, concern, and responsibility as to the child's welfare," in violation of the Juvenile Court Act. (Ill. Rev. Stat. 1975, ch. 37, par. 705—9.) The petition requested that a guardian be appointed for the children with power to consent to their adoption. On November 25, 1975, the State filed an additional petition for "supplemental relief" alleging: (1) that the parents had not made reasonable efforts to correct the problems that were the basis for the removal of the children from the parents' custody, and (2) Rolene Weinstein was habitually drunk for the period of one year prior to the filing of the November 25 petition.

Rolene Weinstein filed a motion for a jury trial on April 29, 1976. On July 20, 1976, the court denied her motion for a jury, finding that "there is no right to a jury trial under a supplemental petition seeking a finding of unfitness and the termination of parental rights." The court also found it did not have discretion to order a jury trial, but "even if this court were vested with discretion to order a jury trial, it would not do so for it would not be in the best interests of the minor respondents or the community at large." On December 10, 1976, the court adjudicated both parents unfit and terminated the Weinsteins' parental rights. The court also determined that it was in the best interests of the children that a guardian be appointed with the right to consent to the adoption of the children.

---

[2] "Parental rights" have been defined as parents' " 'inherent right to the society and custody of their own children.' " *In re Gonzales* (1st Dist. 1974), 25 Ill. App. 3d 136, 143, 323 N.E.2d 42.

## I.

Respondent contends that the court erred in refusing to impanel a jury to hear the evidence in a proceeding to terminate parental rights. Both parties agree that a finding of unfitness and termination of parental rights must be made in compliance with provisions of both the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—9) and the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1 *et seq.*). Neither Act specifically provides for or precludes trial by jury.

Prior to 1966, section 2 of the Family Court Act (Ill. Rev. Stat. 1965, ch. 23, par. 2002) provided that a jury trial was available upon demand. However, on January 1, 1966, the present Juvenile Court Act was enacted and provided that the prior Family Court Act is repealed. The State contends that the legislature's exclusion of a provision allowing a jury trial under the new Juvenile Court Act demonstrates a clear intent by the Illinois legislature to eliminate all jury trials in proceedings under the Act. Respondent contends that the legislature's failure to provide for a jury trial does not preclude the right to a jury without an expressed repudiation of the right incorporated in the statute.

■ It appears that in not including a provision providing for a jury trial, the legislature intended not to allow a jury trial in juvenile court proceedings. This is manifested in the language of numerous sections of the Juvenile Court Act which provide: "The *court* shall hear evidence" and "the *court* shall make a finding" (emphasis added) (Ill. Rev. Stat. 1975, ch. 37, pars. 704—6, 704—7, 704—8, 705—1, 705—3, 705—7(1), etc.) and in section 1 of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1D) which provides:

> " 'Unfit person' means any person whom the *court* shall find to be unfit to have a child sought to be adopted, * * *." (Emphasis added.)

The use of "the court" by the legislature suggests that the court is to be the trier of fact in juvenile proceedings. In *People ex rel. Carey v. White* (1976), 65 Ill. 2d 193, 357 N.E.2d 512, the supreme court held that a circuit court judge has no discretionary power to impanel a jury in juvenile proceedings where the legislature has manifested its intent that the court alone make factual findings in proceedings under the Juvenile Court Act. "It is * * * a cardinal rule of statutory construction that the expression of a mode of action in a statute excludes other methods though not expressly prohibited; and that the enumeration of certain things in the statute implies the exclusion of all other things." *Weeks v. Hoffman* (2d Dist. 1971), 1 Ill. App. 3d 337, 340, 273 N.E.2d 157, citing *In re Estate of Tilliski* (1945), 390 Ill. 273, 283, 61 N.E.2d 24.

■■ The fact that a jury trial was permitted under the old Family Court Act does not establish that the right exists under the new Juvenile Court

Act. In repealing the Family Court Act in 1966, the legislature nullified the provision allowing for a jury trial in juvenile proceedings. The effect of the repeal of a legislative act is to obliterate the act as if it never existed. *Show of Shows, Inc. v. Illinois Liquor Control Com.* (1st Dist. 1967), 86 Ill. App. 2d 109, 230 N.E.2d 268.

Furthermore, the fact that a right existed under a prior Act does not mean it becomes a constitutional guarantee. Proceedings under both the Juvenile Court Act and the Adoption Act are created by statute and were unknown at common law. (*In re Fucini* (1970), 44 Ill. 2d 305, 255 N.E.2d 380; *Houston v. Brackett* (2d Dist. 1963), 38 Ill. App. 2d 463, 187 N.E.2d 545.) The constitutional guarantee of a jury trial does not apply to special or statutory proceedings which were unknown to common law. *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 313 N.E.2d 161.

## II.

Respondent contends that parents have a fundamental right to raise their children which cannot be circumvented without due process. She argues that the constitutional right to trial by jury is implicit in the concept of due process. It is well settled that there is no right to trial by jury in proceedings under the Juvenile Court Act. (*In re Jones* (1970), 46 Ill. 2d 506, 263 N.E.2d 863; *In re Fucini*, at 310.) Respondent argues that prior cases holding that there is no right to a jury in juvenile proceedings applies only to juvenile delinquency actions, and that a proceeding to terminate parental rights is an action against an adult which requires the right to a jury trial.

Although courts recognize the inherent right which all parents have to the society and custody of their own children (*In re Gonzales* (1st Dist. 1974), 25 Ill. App. 3d 136, 143, 323 N.E.2d 42), it is clear that the parents' right to custody of their children will not prevail when the court determines it is contrary to the best interests of the child. Ill. Rev. Stat. 1975, ch. 37, par. 701—2(3)(c); *In re Ice* (3d Dist. 1976), 35 Ill. App. 3d 783, 785, 342 N.E.2d 460.

Respondent contends that the decision in *Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444, which recognizes the right to a jury trial in serious criminal matters, is applicable in the case at bar because termination of parental rights is a serious deprivation of liberty.

In *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976, the United States Supreme Court held that "fundamental fairness" is the due process requirement in juvenile proceedings. The court noted that the decision in *Duncan v. Louisiana* recognized that a jury is not even a necessary part of every criminal process, provided it is

fair and equitable. The court emphasized that notice, counsel, confrontation, cross-examination and a standard of proof are required in juvenile proceedings under the concept of due process, but that a jury trial is not required. Although the decision in *McKeiver* involved a juvenile delinquency proceeding, implicit in the rationale of the holding is that a jury trial is not a fundamental concept of due process. This is further evidenced by the fact that the concept of due process does not compel a jury trial in State court civil proceedings. A State can modify or completely abolish jury trials in civil actions. *Hardware Dealers Mutual Fire Insurance Co. v. Glidden Co.* (1931), 284 U.S. 151, 76 L. Ed. 214, 52 S. Ct. 69; *Olesen v. Trust Co.* (7th Cir. 1957), 245 F.2d 522, *cert. denied* (1957), 355 U.S. 896, 2 L. Ed. 193, 78 S. Ct. 270.

We have found no Illinois case which directly decides the question whether the right to a jury trial exists in proceedings to terminate parental rights. Thus we look to other jurisdictions where the question has arisen. In *In re Lambert* (D.C. Cir. 1953), 203 F.2d 607, in a juvenile court proceeding to have two children declared to be without adequate parental care and committed to the custody of the Board of Public Welfare, the mother of the children claimed a right to a jury trial. The court held that the mother was not entitled to a jury trial under the statute which did not specifically provide for a jury.

In *In re Sean B. W.* (1976), 86 Misc. 2d 16, 381 N.Y.S.2d 656, there was an alleged abandonment by the putative father. The court held that there is no constitutional right to a jury trial in an adoption proceeding even though the effect of an adoption is the termination of the parent's rights.

■■ Since the concept of due process does not require a jury trial, nor is it specifically provided for by Juvenile Court Act, we believe the court did not err in finding it had no discretion to permit a jury trial.

The court recognizes the significance of parental rights and the seriousness of their deprivation. It would be preferable if the legislature removed all uncertainty in this area by way of a clear declaration of its intention either to provide for or to proscribe a jury in such cases.

For the foregoing reasons we affirm the ruling of the juvenile division of the circuit court.

Affirmed.

DOWNING and HARTMAN, JJ., concur.